

EOD

08/27/2007

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| RED LION LAKE DALLAS CLUB, INC., | § | Case No. 05-49039 |
| aka SOHEILA CELINE GILANI, | § | |
| aka SOHEILA CELINE AREFKIA, | § | Chapter 7 |
| | § | |
| Debtor. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

This matter is before the Court following a hearing on the ORDER TO APPEAR AND SHOW CAUSE AS TO WHY FREDERICK GILANI AND STEPHEN D. STEPHENS SHOULD NOT BE SANCTIONED (the "<u>Show Cause Order</u>"). At the conclusion of the hearing, the Court set the matter for later ruling. The Court, having considered the evidence presented at the hearing on February 5, 2007 as well as the post-hearing MOTION BY STEPHEN D. STEPHENS TO EXCLUDE EXHIBITS OR IN THE ALTERNATIVE FOR RE-HEARING, AND REQUEST FOR HEARING (the "<u>Stephens Motion to Exclude</u>") and the MOTION BY FREDERICK GILANI TO EXCLUDE EXHIBITS OR IN THE ALTERNATIVE FOR RE-HEARING, AND REQUEST FOR HEARING (Docket #56) (the "<u>Gilani Motion to Exclude</u>"), makes the following findings of fact and conclusions of law:[2]

## I. FINDINGS OF FACT

### A. Relevant Pre-Bankruptcy Background

1.    Red Lion Lake Club, Inc. ("<u>Red Lion</u>") was/is a bar located at 5008-16

---

[1] This Memorandum Opinion and Order is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

Stemmons Freeway, Lake Dallas, Texas.  Red Lion was licensed by the Texas Alcoholic Beverage Commission ("TABC") to sell mixed beverages and was required to file and pay monthly mixed beverage gross receipts tax returns with the Comptroller.   Red Lion began operating in 2003.

2.     Gilani owns and controls Red Lion.  Gilani, either directly or through the use of other entities or individuals, has operated other bars in the Dallas area, including a location known as the Lion's Lair.  The Lion's Lair did business as Greta's, Inc., which filed a petition for relief in the United States Bankruptcy Court for the Northern District of Texas (the "Northern District Bankruptcy Court") in 2005.  In addition to Red Lion and Greta's, Inc., Gilani operates Sohelia, Red Lion Bar & Grill, Red Lion Club, Inc., and the Lion's Private Club (collectively, the "Bars").

3.     The Bars have been the subject of several audits by the Texas Comptroller of Public Accounts (the "Comptroller").  The Comptroller found that each of the Bars greatly under-reported mixed beverage sales and under-reported and under-paid taxes on such sales.  The Comptroller accordingly assessed tax penalties upon the Bars.

4.     Since August 29, 2002, Gilani and his ex-wife[3] and/or entities that Gilani controls have filed at least fourteen bankruptcy cases using a variety of aliases.  Gilani has used Fred B. Gilani, Fred (H.B.) Gilani dba RL Club of Lake Dallas, Hossein B. Gilani dba T-S Factory, Inc., and Fred Gilani.  In addition, Gilani's ex-wife has used Celina Arefkia, Sohelia C. Bahrigilani, Sohelia Arefkia, Celine S. Arefkia, Soheila Celine Bahrigilani, Soheila Celine Battrigilani, Soheila Bahri Gilani, Soheila Gilani and Soheila

_____

[3] Gilani and his wife were divorced in January of 2005.  However, Gilani has since held himself out as still being married to his ex-wife, and it appears that Gilani and his ex-wife continue to cohabitate. The legal name of Gilani's ex-wife's is unclear from the record in this case.  Thus, for the sake of convenience, the Court will simply refer to her as "Gilani's ex-wife" throughout this Memorandum Opinion.

2

Bahri-Gilani.  Gilani's entities have filed bankruptcy cases as Red Lion Club of Lake Dallas, 121 Red Lion Bar & Grill, Red Lion Club, Inc., Red Lion Club 3040, Lions Private Club Lair, Inc., Red Lion Lake Dallas Club, Inc. aka Soheila Celine Gilani aka Soheila Celine Arefkia, and Greta's, Inc.

5.      Of these fourteen bankruptcy cases, nine have been dismissed, and three of those nine have been dismissed with prejudice to re-filing.  Two cases (this case and the bankruptcy case filed by Greta's, Inc.) are still pending.  Only two of Gilani's cases resulted in a discharge, and one was closed as a corporate no-asset case.

6.      Stephen D. Stephens ("Stephens") has been the debtor's attorney in all but one of these cases.[4]  Stephens has filed hundreds of bankruptcy cases in this Court and approximately 50 bankruptcy cases in the Northern District Bankruptcy Court.  He is an attorney currently licensed to practice law by the Texas State Bar.[5]

7.      Gilani filed a prior case in this Court on December 17, 2003, *In re Fred (H.B.) Gilani*, Case No. 03-45850, (the "2003 Case").  On September 9, 2004, the Court entered an order sanctioning Gilani (the "2004 Sanctions Order") for contempt of certain of the Court's orders in the 2003 Case.  In its Memorandum Opinion entered in connection with the 2004 Sanctions Order, the Court found that Gilani had testified falsely to the Court.

---

[4] The one case in which Stephens did not represent Gilani or Gilani's ex-wife was Case No. 02-86244, *In re Fred B. Gilani*, in the United States Bankruptcy Court for the Eastern District of New York.

[5] Stephens has been the subject of a prior public reprimand by the State Bar of Texas.  On or about September 10, 1997, Stephens entered into an Agreed Judgment of Public Reprimand as well as Agreed Findings of Fact and Conclusions of Law.  The Agreed Findings include (i) that Stephens failed to keep his client reasonably informed about the status of the legal matter for which he was retained, (ii) that Stephens neglected a legal matter entrusted to him by failing to file a lawsuit in a timely manner, and (iii) that Stephens attempted to deceive his client when he provided his client with a petition that contained an erroneous case number.

8.      In the bankruptcy case filed by Greta's, Inc., the Chief Bankruptcy Judge for the Northern District Bankruptcy Court entered an order sanctioning Gilani and Stephens on November 29, 2006.   In her ORDER ASSESSING SANCTIONS AGAINST FREDERICK GILANI AND STEPHEN D. STEPHENS (the "Greta's Sanctions Order"), Judge Houser expressly found that Gilani had engaged in the following misconduct:

(i)      Gilani caused the debtor to file the case in bad faith;

(ii)     Gilani signed false schedules and statements of financial affairs on the debtor's behalf;

(iii)    Gilani operated the debtor's business post-petition after Stephens advised him not to do so and after the trustee attempted to post signs at the debtor's business stating that the business was closed;

(iv)    Gilani refused to surrender the debtor's property, books and records to the trustee; and

(v)     Gilani engaged in abuse of the bankruptcy process by causing the repeat filings noted herein, *supra*.

Judge Houser further found that Stephens had engaged in the following misconduct:

(i)      Stephens has allowed the debtors in Gilani's, his ex-wife's and his entities' bankruptcy cases to file schedules and statements of financial affairs that he knew or should have known were materially false and inaccurate.

(ii)     Stephens facilitated an abuse of the bankruptcy process; and

(iii)    Stephens failed to act in accordance with his responsibilities under the Texas Disciplinary Rules of Professional Conduct and as an officer of the court.

9.      As a sanction, Judge Houser barred Gilani and any entity that he controls, directly or indirectly from filing a bankruptcy case in the Northern District Bankruptcy Court without first obtaining the permission from the Chief Bankruptcy Judge for the Northern District Bankruptcy Court.   In addition, Judge Houser suspended Stephens from

practicing in the Northern District Bankruptcy Court for a period of one year, after which he may apply for reinstatement with the Chief Bankruptcy Judge for the Northern District Bankruptcy Court. Judge Houser also referred the matter to the United States Trustee for further investigation and potential prosecution by the United States Attorney and/or further action by the State Bar of Texas grievance committee.

### B. This Court's Prior Orders Sanctioning Stephens

10.     Stephens was previously sanctioned by this Court in connection with his representation of Richard J. Krawecki in Case No. 01-41281. On April 23, 2001, the Chapter 13 Trustee sought sanctions against Stephens in that case, alleging that:

> (i)     Stephens had filed a prior Chapter 7 case for Mr. Krawecki and had sought to dismiss the prior Chapter 7 case after a secured creditor filed a motion for relief from the automatic stay;
>
> (ii)    Stephens' motion to dismiss the Chapter 7 case was denied based on Stephens' failure to certify that notice of the motion had been served on the United States Trustee and all creditors;
>
> (iii)   While the prior Chapter 7 case was pending, Stephens filed a new Chapter 13 case for Mr. Krawecki;
>
> (iv)    Stephens failed to inform the Chapter 7 trustee that a Chapter 13 case had been filed and was pending for Mr. Krawecki; and
>
> (v)     The Chapter 13 petition "was presented for improper purposes, including manipulation of the automatic stay and increasing the cost of litigation."

11.     On June 12, 2001, the Court entered an AGREED ORDER ON MOTION FOR SANCTIONS in Mr. Krawecki's Chapter 13 bankruptcy case. The Court thereby sanctioned Stephens for prosecuting simultaneous Chapter 7 and Chapter 13 cases on behalf of the same debtor. The Court also ordered Stephens to attach an affidavit to every new bankruptcy case he filed over the next nine months certifying that the debtor in

each such case did not have another active case pending and that the debtor was not barred from filing new bankruptcy cases.

12.     On October 20, 2003, the U.S. Trustee brought an action against Stephens in an adversary proceeding associated with the bankruptcy of Amy Katherine Delarosa, Case No. 03-42560.   In his COMPLAINT SEEKING ACCOUNTING, DENIAL OR DISGORGEMENT OF COMPENSATION, SANCTIONS, CIVIL CONTEMPT, AND ORDER TO SHOW CAUSE, which initiated in an Adversary Proceeding No. 03-04259, the U.S. Trustee alleged that:

> (i)     Stephens had filed a prior Chapter 13 case for Ms. Delarosa that was dismissed with prejudice for 180 days because Ms. Delarosa failed to attend the creditors' meeting, failed to make plan payments, and failed to achieve confirmation of a plan of repayment;

> (ii)    Stephens filed a new Chapter 7 case for Ms. Delarosa before the 180-day bar date had expired; and

> (iii)   Although the new Chapter 7 case was purportedly filed and prosecuted by Ms. Delarosa *pro se*, the case was actually being handled by Stephens (notwithstanding Stephens protestations to the contrary).

13.     On June 8, 2004, the Court entered its FINAL JUDGMENT REQUIRING DISGORGEMENT AND IMPOSING SANCTIONS (the "Final Judgment").   The Court's Final Judgment required that Stephens, *inter alia*, disgorge $750 in fees paid by Ms. Delarosa, make a payment of up to $1,000 to Wells Fargo for attorneys' fees and expenses incurred by Wells Fargo in connection with a lift stay motion in the Chapter 13 case, and pay a fine of $500 to the Court for failing to disclose his representation of Ms. Delarosa in the Chapter 7 case.

14. The Final Judgment also required Stephens to file certifications in the adversary proceeding attesting to his completion of various continuing legal education requirements within 18 months of the entry of the Final Judgment. In addition, the Final Judgment gave Stephens 120 days to put all fee arrangements with existing clients in writing. With respect to new clients, the Final Judgment required Stephens to put all fee arrangements in writing and maintain financial records reflecting funds received.

15. Stephens disregarded this Court's Final Judgment by failing to put his fee arrangements in writing. At a hearing held on May 23, 2006 in the bankruptcy case filed by Greta's, Inc., Stephens admitted to Judge Houser that his fee arrangements with Gilani have not been reduced to writing. Stephens also disregarded the Final Judgment by failing to file any of the required certifications of continuing education with the Court.

### C. Gilani's and Stephens' Actions in the Red Lion Bankruptcy Case

16. Gilani commenced this bankruptcy case for Red Lion by filing a petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on November 18, 2005 (the "Petition Date"). Gilani completed and signed the Voluntary Petition and the accompanying documents, namely, (1) Exhibit "A" to Voluntary Petition, (2) Declaration Concerning Debtor's Schedules, (3) Statement of Financial Affairs, (4) Chapter 7 Individual Debtor's Statement of Intention, and (5) Verification of Creditor Matrix as the Debtor's "Owner/President." Michelle Chow is the Chapter 7 Trustee in this case.

17. The Schedules, Statement of Financial Affairs, and accompanying documents completed by Gilani in this case contained numerous intentional and material misrepresentations by Gilani. Moreover, Stephens knew of Gilani's prior bankruptcy

cases and knew that the Schedules, Statement of Financial Affairs and accompanying documents filed in this case were materially different than the Schedules, Statement of Financial Affairs and accompanying documents filed in other cases.  Stephens failed to conduct a reasonable inquiry (or any inquiry) into the veracity of the Debtor's Schedules, Statement of Financial Affairs, and accompanying documents.

18.    The meeting of creditors, which was originally scheduled to begin on February 26, 2006 pursuant to §341(a) of the Bankruptcy Code (the "§341 meeting") was continued eight times.  Gilani failed to attend all but two or three of these meetings. Stephens failed to attend the §341 meeting scheduled for September 1, 2006.

19.    Although Red Lion's Schedules indicate that it has no officers or directors, Gilani signed the Voluntary Petition, Schedules, Statement of Financial Affairs and accompanying documents as Red Lion's "Owner/President."   Gilani testified at one of the §341 meetings that he is an officer and director of Red Lion.  However, Gilani testified at a subsequent §341 meeting that he was never Red Lion's owner.

20.    Red Lion's Statement of Financial Affairs indicates that it has no books or records.  However, Gilani's testified at one of §341 meetings that approximately 5,000 pages of the Debtor's books and records had been turned over to the Comptroller. Significantly, these books and records were returned to Gilani prior to this testimony but have not been provided to the Chapter 7 trustee.

21.    Exhibit "A" to Red Lion's Voluntary Petition falsely states that Red Lion has no debts or liabilities.   In fact, Red Lion owes a substantial amount to the Comptroller.  At one of the §341 meetings, Gilani admitted that Red Lion's tax debt to

the Comptroller was the primary reason for the present bankruptcy case.  Gilani testified

he filed this case to frustrate the Comptroller's efforts to collect the tax debt, as follows:

> Certainly I wanted to get you off my back, which I did, didn't I?  You
> sucked the juice out of the people in this town.  You did.  To get you off
> my back I did that.  And I'm so glad I did it.  There was no other creditor.
> Everybody was paid and the business shut down and everybody was
> happy.  And nobody wanted to go back.  It was voluntary shut down.  But
> no, you wouldn't go away, would you?  Because you wanted to have
> another notch in your gun, say I'm the big shot from Austin.  Which
> you're not.

Gilani has not attended any of scheduled §341 meetings since giving this testimony.

22.     The Chapter 7 trustee has repeatedly requested that Red Lion produce its

latest filed tax returns and six months of bank statements.  Gilani has failed to comply

with these requests and has falsely represented to the Chapter 7 trustee that he is unable

to obtain any bank statements.  Red Lion's bank statements are, in fact, available to

Gilani -- the trustee in the bankruptcy filed by Greta's, Inc. in the Northern District

Bankruptcy Court captured a November 2005 bank statement for Red Lion in a lock-

down of another of Gilani's business locations.[6]

23.     Gilani's failure to comply with the Chapter 7 trustee's requests for basic

documents and Gilani's repeated failure to attend Red Lion's §341 meetings have

prevented the Chapter 7 trustee from effectively administering this case.  To the extent

Gilani has provided information about Red Lion's assets to the Chapter 7 trustee, the

information has often been false or subsequently contradicted by Gilani himself.

24.     As a further example of Gilani's misrepresentations to the Chapter 7

trustee, Red Lion's Schedules indicate that Red Lion had office furniture and equipment

valued at $10,000.00 and alcohol inventory valued at $3,000.00 as of the Petition Date.

---

[6] This bank statement reflects transactions by Red Lion that occurred after the Petition Date.

Gilani testified at one of the §341 meetings that Red Lion's office furniture and equipment were lost in a foreclosure action by Red Lion's landlord.[7] Gilani changed his testimony at a subsequent §341 meeting to admit that there was no such foreclosure. Gilani testified that he simply left the missing assets at Red Lion's location and has no idea what happened to them.

25.    Gilani has also provided the trustee with contradictory information about Red Lion's leasehold improvements, which are valued at $60,000.00 in Red Lion's Schedules. Gilani testified at one of the §341 meetings that the Red Lion's leasehold improvements could not be sold and had no value. In direct contradiction of this testimony, Red Lion, acting through Fozan Management Company (which is owned and controlled by Gilani, his ex-wife, and/or ex-mother-in-law) entered into an agreement with Mr. Stuart Spradley to sell all of the assets located at Red Lion's place of business, including the fixtures, prior to the Petition Date.

### D. Relevant Procedural History

26.    On November 29, 2005, the Court entered its ORDER SETTING 8-DAY DISMISSAL DEADLINE FOR FILING DECLARATIONS OF ELECTRONIC FILING (the 8-Day Dismissal Order") pursuant to the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Eastern District of Texas (the "Local Bankruptcy Rules"). The 8-Day Dismissal Order directed the Debtor to file the requisite Declarations of Electronic Filing within eight days of the Order's entry. However, the Debtor failed to comply with the 8-Day Dismissal Order.

---

[7] This testimony contradicted Red Lion's Statement of Financial Affairs, which indicates that none of Red Lion's property was seized or foreclosed upon within one year of the Petition Date.

10

27.    On February 1, 2006, the Comptroller filed its RESPONSE OF THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS TO THE COURT'S ORDER SETTING EIGHT DAY DISMISSAL DEADLINE AND REQUEST TO KEEP CASE OPEN.  The Comptroller alleged that this case is related to the case filed by Greta's, Inc. in the Northern District Bankruptcy Court.  The Comptroller requested that the Court maintain this as an open case pending a further report from the Comptroller.

28.    On August 2, 2006, Stephens filed his MOTION TO WITHDRAW AS COUNSEL.  Stephens sought to withdraw as Red Lion's counsel on the basis that he "has attended at least four (4) creditor's meeting [sic], at least 2 of which debtor has failed to appear and produce bank records requested by the Trustee."   Stephens' motion to withdraw remains pending.

29.    On September 8, 2006, the Comptroller filed its MOTION FOR ISSUANCE OF ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED ON FRED GILANI AND ATTORNEY STEPHEN D. STEPHENS (the "Show Cause Motion").  The Comptroller alleged that this case is part of a pattern of abuse of the bankruptcy system by Gilani and Stephens.  The Comptroller requested that the Court enter an order for Gilani and Stephens to show cause why they should not be sanctioned.

30.    The Court scheduled hearings on the Show Cause Motion and the Motion to Withdraw (the "Hearings") for October 19, 2006.  Gilani and Stephens received timely notice of these Hearings pursuant to the Local Bankruptcy Rules and the Federal Rules of Bankruptcy Procedure.

31.    On September 26, 2006, Stephens filed his MOTION FOR CONTINUANCE AND REQUEST FOR SPECIAL SETTING ON MOTION FOR ISSUANCE OF ORDER TO SHOW

CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED ON FRED GILANI AND ATTORNEY STEPHEN STEPHENS AND MOTION TO DISMISS WITH PREJUDICE AND MOTION TO WITHDRAW AS ATTORNEY (Docket #20).  The Court granted this motion, in part, and continued the Hearings to November 9, 2006.  Gilani and Stephens received timely notice of the continued Hearings pursuant to the Local Rules and the Federal Rules of Bankruptcy Procedure.

32.     On October 6, 2006, Gilani and Stephens filed their MOTION FOR CONTINUANCE OF TEXAS COMPTROLLER OF PUBLIC ACCOUNTS' MOTION FOR ISSUANCE OF ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED ON FREDERICK GILANI AND ATTORNEY STEPHEN D. STEPHENS.  The Court denied this motion on October 30, 2006.

33.     The Court entered the Show Cause Order on December 5, 2006 and carried Stephens' pending motion to withdraw.  The Court scheduled a hearing on the Show Cause Order for February 5, 2007 (the "Show Cause Hearing").  Gilani and Stephens received timely notice of the Show Cause Order and the Show Cause Hearing pursuant to the Local Bankruptcy Rules and the Federal Rules of Bankruptcy Procedure.

34.     The Show Cause Order required, *inter alia*,

> that responses to this Order to Appear and Show Cause shall be filed by Gilani and Stephens, and served upon the Comptroller, the Trustee, and the United States Trustee, on or before January 29, 2007, setting forth in detail their respective positions with respect to these matters.  If either Gilani or Stephens fails to file such a response, that party shall not be heard in opposition to the requested sanctions, unless the Court, at the Show Cause Hearing, excuses the filing of such a response for good cause shown[,]
> . . .
>
> that the Comptroller, and any other party intending to introduce evidence at the Show Cause Hearing, shall serve a witness list and

any exhibits it intends to introduce at the Show Cause Hearing in support of, or in opposition to, any requested sanctions on the opposing party no later than January 29, 2007[, and]

. . .

that, no later than February 1, 2007, each party shall file a list detailing those Exhibits to which they stipulate for admission and those to which they object, stating their objections.  The failure to file this list of stipulations and objections shall result in the waiver of any right to object to the admission of the exhibits on any grounds except as to relevance.

35.     On January 25, 2007, Stephens filed his RESPONSE OF STEPHEN D. STEPHENS TO TEXAS COMPTROLLER OF PUBLIC ACCOUNTS MOTION TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED.  In his response, Stephens argued that the Show Cause Motion is barred by the doctrine of *res judicata* because of the Greta Sanctions Order entered by the Northern District Bankruptcy Court.  Stephens incorporated his Original Response and Supplemental Response filed in sanctions proceeding in the Northern District Bankruptcy Court.  Stephens also alleged that (i) Red Lion is no longer operating and this case was not filed in bad faith, (ii) Gilani is Red Lion's president and owner, (iii) Red Lion has no books and records, (iv) Stephens had no reason to believe Red Lion's Schedules were not true at the time they were filed with regard to office furniture and equipment, leasehold improvements, and alcohol inventory, and (v) Stephens could not control Gilani with regard to Gilani's production of tax returns or "back statements."

36.     In his response to the Show Cause Motion, Stephens denied that a certain letter from him to Mr. Spradley listing assets was a letter consummating or confirming a sale of Red Lion's  assets.  Stephens denied that he had any knowledge that a sale of Red

13

Lion's assets had taken place.  He alleged that he had advised Gilani that any such sale would not be consummated because Red Lion's assets "belonged to the bankruptcy."

37.    Gilani never filed a response to the Show Cause Order and never filed any objections to the Comptroller's exhibits.  On January 26, 2007, Gilani filed his MOTION OF FRED GILANI TO CONTINUANCE.  Gilani alleged that the Comptroller failed to provide him "with a full set of pleadings, exhibits, and all other documents he basis [sic] his sanction motion on, or which he intends to use at the hearing on this matter."

38.    On or about February 2, 2007, the Comptroller and Stephens filed their STIPULATION OF THE TEXAS COMPTROLLER AND STEPHEN D. STEPHENS CONCERNING EXHIBITS FOR HEARING SCHEDULED FEBRUARY 5, 2006 (the "Stipulation").    The Comptroller thereby stipulated to the admission of all of Stephens' exhibits (Nos. 1-22) at the Show Cause Hearing.  Stephens likewise stipulated to the admission of all of the Comptroller's exhibits (Nos. 1-143).

39.    The Court conducted the Show Cause Hearing on February 5, 2007. Gilani twice requested a continuance at the Show Cause Hearing.  At the beginning of the Show Cause Hearing, Gilani requested a continuance because he alleged that he did not receive the Comptroller's exhibits in time to prepare for the Show Cause Hearing.  Later in the hearing, Gilani again requested a continuance because claimed that he had recently taken insulin to treat his diabetes and, as a consequence, was too tired to participate in the hearing.[8]  The Court denied Gilani's motions for continuance.

40.    On February 8, 2007, the Comptroller filed its NOTICE TO CLARIFY RECORD BY THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS in which the Comptroller

---

[8] Gilani's claim that he was too tired to participate in the hearing was not credible.  His second oral request for a continuance was yet another example of the dilatory tactics in which he has engaged throughout this bankruptcy case.

14

advised the Court that its exhibits were delivered to Stephens and Gilani on January 30, 2007. The Comptroller also advised the Court that the exhibits' delivery one day later than the Court specified in its Show Cause Order was the result of inadvertence due to a late pick-up by UPS. Stephens and Gilani subsequently filed their Motions to Excluded.

41.     In his Motion to Exclude, Stephens claims that his stipulation to the exhibits' admission was based on the mistaken "condition precedent" that the exhibits were timely delivered. In the alternative, Stephens requests a re-hearing because the exhibits' late delivery "worked an undue hardships [sic] on [Stephens] in preparing for the hearing." Gilani's Motion to Exclude parrots Stephens' Motion to Exclude, seeking the same relief on the same grounds.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

42.     The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334(a) and 157(a), and the United States District Court for the Eastern District of Texas' Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc*. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

### B. Objections to Evidence

43.     As an initial matter, Gilani failed to file a timely response to the Show Cause Order. Gilani has not established good cause for this failure. Accordingly, pursuant to the terms of the Show Cause Order, Gilani is barred from contesting the requested sanctions.

44.     Even if Gilani had not waived his right to be heard, he failed to raise timely objections to the Comptroller's exhibits as required by the Show Cause Order.

Stephens also failed to make any objection to the Comptroller's exhibits -- indeed, Stephens stipulated to their admission. Stephens' argument that that delivery of the Comptroller's exhibits on January 30, 2007 rather than on January 29, 2007 worked an undue hardship on him in preparing for this case is disingenuous and made in bad faith.[9] The Court expressly finds that Stephens filed his post-hearing Motion to Exclude for the purpose of causing unnecessary delay in this litigation and not for any legitimate purpose.

### C. *Res Judicata*

45.     The rule of *res judicata* encompasses two separate but linked preclusive doctrines: (1) true *res judicata* or claim preclusion and (2) collateral estoppel or issue preclusion. *See St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 436 (5th Cir. 2000) (internal citation omitted). Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir. 2004) (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)). The test for claim preclusion has four elements: (1) the parties must be identical in both suits, (2) a court of competent jurisdiction must have rendered the prior judgment, (3) there must have been a final judgment on the merits in the previous decision, and (4) the plaintiff must raise the same cause of action in both suits. *See Howe v. Vaughn (In the Matter of Howe)*, 913 F.2d 1138, 1143-44 (5th Cir. 1990).

---

[9] In any event, the Comptroller's delivery of the exhibits on January 30, 2007 did not prejudice Gilani or Stephens. The Comptroller satisfactorily explained to the Court that the exhibits' delivery on January 30, 2007 rather than January 29, 2007 was the result of inadvertence. Moreover, Gilani and Stephens had previously received the Comptroller's exhibits nos. 1-138 in the same order during the sanctions proceedings in the Northern District Bankruptcy Court. Four of the five new exhibits that the Comptroller used at the Show Cause Hearing were merely of transcripts of proceedings in which Gilani and Stephens participated and orders entered in this case and the bankruptcy case filed by Greta's, Inc. Gilani's testimony at the Show Cause Hearing that he did not receive all necessary pleadings, exhibits and other documents in time to defend himself was not credible or supported by the evidence.

46.     In this case, as previously discussed, Stephens argues that *res judicata* and the Greta's Sanctions Order bar this Court from imposing sanctions.   In order to determine whether *res judicata* bars the requested sanctions, the Court uses a transactional test to determine whether this proceeding involves the same cause of action as the sanctions proceeding before Judge Houser.  *Id.*  The critical issue is whether the two proceedings are based on the "same nucleus of operative facts."  S*ee Davis v. Dallas Area Rapid Transit,* 383 F.3d 309 (5th Cir. 2004).

47.     The cause of action before this Court is similar, but not identical, to the cause of action in the Northern District Bankruptcy Court.  The "cause of action" before this Court is a determination of whether cause exists for imposing sanctions on Gilani and/or Stephens for their misconduct in *this* case and the injury they caused to *this* Court. The Northern District Bankruptcy Court addressed a separate injury to *that* Court arising from Gilani's and Stephens' actions in connection with the bankruptcy of Greta's, Inc.

48.     In determining whether to impose sanctions, the Court must determine whether Gilani and/or Stephens committed sanctionable acts in this and other cases before this Court.  The doctrine of *res judicata* does not bar the Court from considering whether Stephens and Gilani used this Court as part of a scheme to abuse the bankruptcy process – the Court is not considering sanctions against Stephens or Gilani for their misconduct in cases before other courts, but to tailor its sanctions to remedy any sanctionable conduct before this Court.  *See In re Porcheddu*, 338 B.R. 729, 743 (Bankr. S.D. Tex. 2006).  In short, the Court may consider past misconduct for the purpose of understanding the full scope of the abusive scheme and to determine the appropriate level of sanctions reasonably required to deter future misconduct in this Court.  *Id*.

49.     On the other hand, Gilani and Stephens are collaterally estopped from re-litigating the factual findings that form the basis of the Greta Sanctions Order.  Collateral estoppel applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment.  *See, e.g., Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 290 (5th Cir. 2005).  Moreover, collateral estoppel may be applied offensively when, as in this case, there is "no special circumstance that would render preclusion inappropriate or unfair."  *Copeland v. Merrill Lynch & Co. Inc.,* 47 F.3d 1415 (5th Cir. 1995).

### D. The Court's Authority to Sanction and its Duty to Report Misconduct

50.     Under Rule 9011 of the Federal Rules of Bankruptcy Procedure, the Court has broad discretion to impose sanctions that are narrowly tailored to further the objectives of that rule.  *See American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 533 (5th Cir. 1992).  In addition, this Court has the inherent power to impose sanctions in order to protect and maintain the authority and dignity of the court.  *See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991); *See Chaves v. M/V Medina Star*, 47 F.3d 153 (5th Cir. 1995).  "This inherent power extends to the sanctioning of counsel for knowingly filing false schedules."  *In re Diaz*, 348 B.R. 752, 758 (Bankr. S.D. Tex. 2006) (citing *In re Thomas*, 337 B.R. 879 (Bankr. S.D. Tex. 2006)).  Further, in cases involving an abuse of process, §105(a) of the Bankruptcy Code grants this Court statutory authority to impose "necessary and appropriate" sanctions, which should be narrowly tailored to the abuse.  *See, e.g., Support Systems Int'l, Inc. v. Mack,* 45 F.3d 185, 186 (7th Cir. 1995).

51.     Here, Gilani (i) caused Red Lion to file this case in bad faith, (ii) intentionally signed materially false Schedules, Statement of Financial Affairs, and accompanying documents on the Debtor's behalf, (iii) refused to surrender possession of the Debtor's assets listed in its Schedules to the Chapter 7 trustee, (iv) refused to surrender possession of the Debtor's books and records to the Chapter 7 trustee, (v) testified falsely about material matters regarding this case, (vi) caused the Chapter 7 trustee to undertake substantial efforts as a result of his failure to comply with the Bankruptcy Code's requirements, (vii) caused the Comptroller to undertake substantial efforts and incur substantial costs in the reasonable amount of $6,258.10 as a result of his failure to comply with the Bankruptcy Code's requirements, and (ix) injured this Court's integrity and disrupted this Court's operations as a result of his failure to comply with the Bankruptcy Code's requirements.

52.     Stephens (i) facilitated Gilani's abuse of the bankruptcy process by knowingly signing and allowing Gilani to file materially false Schedules, Statement of Financial Affairs, and accompanying documents in this case, (ii) filed a frivolous pleading (namely, his Motion to Exclude) solely for the purpose of delaying this case, (iii) acted in bad faith in this case and failed to act in accordance with his responsibilities under the Texas Disciplinary Rules of Professional Conduct and as an officer of the Court, (iv) caused the Comptroller to undertake substantial efforts and incur substantial costs in the reasonable amount of $6,258.10 as a result of his misconduct, and (v) injured this Court's integrity and disrupted this Court's operations as a result of his misconduct.

53.     The Court finds the conduct of Gilani and Stephens to be sanctionable. With respect to appropriate sanctions against Stephens and Gilani, it is a federal crime to

make a false or fraudulent representation in connection with a bankruptcy case. *See* 18 U.S.C. §157. Any judge that has reasonable grounds for believing that 18 U.S.C. §157 (or any other federal law) has been violated must report such violation to the appropriate United States attorney. *See* 18 U.S.C. §3057(a). Pursuant to Canon 3(B)(3) of the Code of Conduct for United States Judges, the Court is obligated to "initiate appropriate action when the [Court] becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a . . . lawyer."

54.     Admission to practice before this Court is governed by the Local Rules of the United States District Court for the Eastern District of Texas (the "<u>District Local Rules</u>"). District Local Rule AT-2(b)(1) provides for an automatic suspension from practicing in the United States District Court for the Eastern District of Texas of an attorney who is suspended by another court. Rule AT-2(b)(2) provides that when an attorney is suspended by another court, the automatic suspension in the Eastern District of Texas will be on the same terms and conditions as in the court issuing the original order of suspension. Thus, Stephens is already barred from practicing bankruptcy in the Eastern District of Texas due to the entry of the Greta's Sanctions Order by the Northern District Bankruptcy Court.

### III. CONCLUSION

55.     Gilani's and Stephens' abuse of process in this case is part of a larger pattern of bankruptcy abuse that has extended through this and other courts over a period of several years. This is despite previous sanctions imposed by this Court in an effort to deter Stephens' and Gilani's misconduct. Gilani's actions in particular, in this and other cases, are manifestations of a complete disregard and utter contempt for the law and the

authority of those government officials charged with enforcing the law.  For the reasons set forth herein,

IT IS ORDERED that the Motion to Exclude filed be Stephens shall be, and hereby is, **DENIED.**

IT IS FURTHER ORDERED that the Motion to Exclude filed by Gilani shall be, and hereby is, **DENIED.**

IT IS FURTHER ORDERED that Gilani's objection(s) to the Comptroller's exhibits at the Show Cause Hearing shall be, and are hereby, **DENIED**.

IT IS FURTHER ORDERED that the following sanctions will be imposed on Gilani.  The Court shall refer these matters to the United States Trustee for further investigation and potential prosecution by the United States Attorney.  Red Lion, Gilani, and any entity that Gilani controls directly or indirectly, through his ex-wife, ex-mother-in-law, or any other relatives, friends or entities, are barred from filing for relief under the Bankruptcy Code in this District without first obtaining permission to file, in the form of a written order, from the Chief United States Bankruptcy Judge for the Eastern District of Texas.  If Gilani or any such entity wishes to file for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, a miscellaneous proceeding shall first be filed in which Gilani shall seek permission for himself or the entity to file for relief under the Bankruptcy Code.  A copy of this Memorandum Opinion and Order shall be attached as an exhibit to the pleading initiating the miscellaneous proceeding.  The miscellaneous proceeding shall be assigned to the Chief Bankruptcy Judge for the Eastern District of Texas.  Immediately upon the opening of the miscellaneous proceeding, Gilani will serve notice to his or the entity's creditors that the

miscellaneous proceeding has been opened for the purpose of seeking permission for him

or the entity to file a case under the Bankruptcy Code. The notice will include a copy of

this Order.

IT IS FURTHER ORDERED that the following sanctions will be imposed upon

Stephens. The Court shall refer this matter to the United States Trustee for further

investigation and potential prosecution by the United States Attorney. The Court will

also refer this matter to the State Bar of Texas Grievance Committee. Stephens is barred

from practicing in the United States Bankruptcy Court for the Eastern District of Texas

for a period of two (2) years with the exception that Stephens may continue as counsel in

any pending case in which he is currently serving as counsel until such case is closed

and/or dismissed. At the expiration of this two (2) year period, Stephens may request a

lifting of the suspension of the right to practice in the bankruptcy courts of the Eastern

District of Texas by filing a miscellaneous proceeding before the Chief Bankruptcy Judge

for the Eastern District of Texas. In his request for a lifting of the suspension, Stephens

shall (1) demonstrate that this suspension from practice in the bankruptcy courts for the

Northern District of Texas has been lifted; (2) provide detailed information as to the steps

he has taken to comply with the Agreed Final Judgment previously entered in Adversary

Proceeding No. 03-04259. A copy of this Memorandum Opinion and Order shall be

attached to the pleading initiating the miscellaneous proceeding.

IT IS FURTHER ORDERED that Stephens and Gilani are each jointly and

severably liable for the full amount of $6,258.10, the amount of the Comptroller's

reasonable costs incurred in connection with this case. This amount shall be paid to the

Comptroller by a cashier's check within thirty (30) days of the entry of this Memorandum

Opinion and Order.   After that date, interest will accrue on this amount at the rate of

4.44% per annum.

Signed on 8/27/2007

*Brenda T. Rhoades*                SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE